TIMOTHY COURCHAINE
United States Attorney
District of Arizona
Matthew Williams
Assistant U.S. Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: matthew.williams3@usdoj.gov

LORINDA LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice
William Hochul III
Shane Butland
Trial Attorneys
1400 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-538-4256
Email: William.Hochul.iii@usdoj.gov

Attorneys for Plaintiff

☐ FILED ☒ LODGED
Jul 08 2025
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

vs.

Gina Palacios,

Defendant.

No. CR- CR-25-00947-PHX-DWL (ASB)

**PLEA AGREEMENT**

Plaintiff, United States of America, and the defendant, Gina Palacios, hereby agree to resolve this matter on the following terms and conditions:

**1. <u>PLEA</u>**

The defendant will plead guilty to an Information charging the defendant with a violation of Title 18, United States Code (U.S.C.) § 1349, Conspiracy to Commit Health Care Fraud, a Class C felony offense.

**2. <u>MAXIMUM PENALTIES</u>**

a. A violation of 18 U.S.C. § 1349 is punishable by a maximum fine of

$250,000 or twice the pecuniary gain or loss incurred by another, a maximum term of imprisonment of 10 years, and term of supervised release of 3 years, or all three combined. A maximum term of probation is 5 years (including a minimum term of one year if probation is imposed).

b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when a sentence of imprisonment of more than one year is imposed; and

(4) pay upon conviction a $100 special assessment pursuant to 18 U.S.C. § 3013.

c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime of conviction, unless there are stipulations to the contrary that the Court accepts.

**3. EXCLUSION FROM FEDERAL HEALTH CARE PROGRAMS**

a. The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded as a provider from Medicare, Medicaid, and all federal health care programs. The defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including, but not limited to, the United States Department of Health and Human Services, to effectuate the exclusion within 60 days of receiving the documents. The exclusion will not affect the defendant's right to apply for and receive benefits as a beneficiary under any federal health care program, including Medicare and Medicaid.

**4. <u>AGREEMENTS REGARDING SENTENCING</u>**

a. Recommendations. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), The United States and the defendant recommend the following as to the sentence to be imposed:

(1) Low End Sentence: The United States will recommend that the defendant's sentence shall not exceed the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a).

(2) Base Offense Level. The defendant's base offense level is 6 pursuant to U.S.S.G. § 2B1.1(a)(2).

(3) Loss Amount. A reasonable estimate of the defendant's intended loss is more than $25,000,000, but less than $65,000,000, resulting in an increase of 22 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(L).

(4) Federal Health Care Offense. The defendant is pleading guilty to a federal health care offense involving a loss to a government health care program exceeding $20,000,000, resulting in an increase of 4 levels pursuant to U.S.S.G. § 2B1.1(b)(7).

(5) Abuse of Trust. The defendant abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense, resulting in an increase of 2 levels pursuant to U.S.S.G. § 3B1.3.

(6) Zero Point offender. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will not assert that any of the criteria listed under U.S.S.G. §§ 4C1.1(a)(2)-(10) apply.

(7) Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

(8) Non-Binding Recommendations. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

b. Restitution. Pursuant to 18 U.S.C. § 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $28,442,271, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

c. CMS Suspended Payments. The defendant further agrees to waive any ownership interest she may have in the $87,641,543 currently suspended by the Centers for Medicare and Medicaid Services ("CMS") ("the Suspended Amount"). The Suspended Amount constitutes payments suspended by CMS based on certain false and fraudulent claims made by APX Mobile Medical LLC to Medicare. The defendant expressly relinquishes any and all rights of any kind that she, or any companies over which she had control, may have with respect to the Suspended Amount, including, but not limited to, any and all claims or rights to have an overpayment determined under 42 C.F.R. § 405.372(c), any and all rights to payment of those funds, and any and all rights to appeal, whether formally or informally and whether administratively or judicially, the right of the United States and/or CMS to retain those funds.

d. Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the

United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

**5. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6. WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the Information; and

(2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**7. DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8. FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a. Nothing in this agreement shall be construed to protect the defendant from

administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

b. The defendant agrees to forfeit, and hereby forfeits, all interest in any asset that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of the offense, or which was used to facilitate the commission of the offense, including the following property:

> A sum of money equal to approximately $313,500, which amount represents the proceeds that the defendant obtained, directly or indirectly, possessed, owned, and exercised dominion or control.

c. The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

d. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to the forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

e. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy, or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

f. The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant further agrees that she will not contest civil, administrative, or judicial forfeiture of the listed property. The defendant agrees to waive her right to notice of any forfeiture proceeding involving this property and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

g. The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible, were involved in or proceeds of the offense. The defendant hereby waives and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property listed above. Without limitation, the

defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

**9. ELEMENTS**

**Conspiracy to Commit Health Care Fraud (18 U.S.C. § 1349)**

To prove the crime of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349, the government must prove the following elements beyond a reasonable doubt:

1. There was an agreement between two or more persons to commit the crime of health care fraud, in violation of 18 U.S.C. § 1347; and
2. The defendant became a member of the conspiracy knowing its object and intending to help accomplish it.

**Health Care Fraud (18 U.S.C. § 1347)**

To prove the crime of Health Care Fraud, in violation of 18 U.S.C. § 1347, the government must prove the following elements beyond a reasonable doubt:

1. The defendant knowingly and willfully executed or attempted to execute a scheme or plan to defraud a health care benefit program, or a scheme or plan to obtain money or property owned by or under the custody or control of a health care benefit program, by means of materially false or fraudulent pretenses, representations, or promises;
2. The defendant acted with the intent to defraud; that is, the intent to deceive and cheat;
3. Medicare was a health care benefit program; and
4. The scheme or plan was executed in connection with the delivery of or payment for health care benefits, items, or services.

**10. FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

b. Beginning in or around September 2023 and continuing through in or around February 2024, within the District of Arizona and elsewhere, the defendant knowingly and intentionally combined, conspired, confederated, and agreed with others, in violation of 18 U.S.C. § 1349, to knowingly and willfully execute a scheme and artifice to defraud Medicare and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items, and services contrary to 18 U.S.C. § 1347.

The defendant is a licensed nurse practitioner and an enrolled Medicare provider.

Medicare is a "health care benefit program," as defined in 18 U.S.C. § 24(b), and a "federal health care program," as defined in 42 U.S.C. § 1320a-7b(f).

Beginning in or around September 2023, the defendant contracted with purported wound care company APX Mobile Medical LLC ("APX"), based in Arizona, to order and apply amniotic wound dressings ("allografts") sold by Company 1, a limited liability company formed under the laws of Texas, with its principal place of business in Fort Worth, Texas.

The defendant agreed with others to order and apply allografts billed to Medicare that were medically unnecessary and ineligible for Medicare reimbursement.

Specifically, Apex Medical LLC ("Apex") paid medically untrained sales representatives to identify elderly Medicare beneficiaries with a wound or wounds of any stage to which Company 1's allografts could be applied.

Apex sales representatives referred these patients to the defendant based on the sales representatives' own assessments of the patients' wounds.

The defendant agreed to and did apply Company 1's allografts to patients identified by Apex sales representatives without exercising independent medical judgment and in the quantity and frequency determined by Apex and its sales representatives.

From approximately September 2023 through approximately February 2024, APX fraudulently billed Medicare approximately $59,470,478 for allografts purchased from Company 1 and ordered and applied by the defendant to approximately 56 Medicare beneficiaries. Medicare paid APX approximately $28,442,271 based on those false and fraudulent claims. APX paid the defendant approximately $313,500 in exchange for ordering and applying the allografts fraudulently billed to Medicare.

c. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

**APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range

of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement, and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

6/25/25

Date

GINA PALACIOS
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

6/25/25
Date

RICHARD J. SUZUKI
Attorney for Defendant

/ / /

/ / /

/ / /

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

Digitally signed by MATTHEW WILLIAMS
Date: 2025.06.26 16:17:21 -07'00'

6/26/2025
Date

MATTHEW WILLIAMS
Assistant U.S. Attorney

LORINDA LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

Digitally signed by MATTHEW WILLIAMS
Date: 2025.06.26 16:18:30 -07'00' for

6/26/2025
Date

William Hochul III
Shane Butland
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice

## ACCEPTANCE BY THE COURT

Date

Honorable
United States District Judge